UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOBCONNECTION SERVICES, INC., a Pennsylvania Corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOSE MUNOZ, ROBERTO ABREU, and RIGHT HAND STAFFING SOLUTIONS, LLC<br><br>　　　　Defendants. | Civ. No. 2:13-3901 (WJM) |
| JOSE MUNOZ and ROBERTO ABREU,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BRECKENRIDGE ENTERPRISES, INC. and SOUTH EAST PERSONNEL LEASING, INC.,<br><br>　　　　Defendants. | OPINION |

1

**WILLIAM J. MARTINI, U.S.D.J.:**

Pursuant to Fed. R. Civ. P. 70, Plaintiff Job Connection Services, Inc. seeks to enforce a consent order that prohibits Defendants Jose Munoz and Right Hand Staffing Solutions, LLC from doing business with certain entities for a period of one year. Plaintiff seeks compensatory damages, an injunction, and an award of reasonable attorneys' fees and costs. For the reasons stated in this Opinion, Plaintiff's request for compensatory damages is **DENIED**, but its request for an injunction and reasonable attorneys' fees and costs is **GRANTED**.

## I. BACKGROUND

Plaintiff Job Connection Services, Inc. ("JCS") is in the business of providing staffing support and other human resources services to employers in a variety of industries. JCS operates 10 branch offices, including two branch offices located in Passaic, New Jersey. Defendants Jose Munoz ("Munoz") and Roberto Abreu ("Abreu") are former JCS employees. Munoz worked at JCS from 2007 to 2012, while Abreu worked there from 2005 to 2013. Upon accepting their employment, Munoz and Abreu entered into non-competition agreements (hereinafter, "the Non-Compete Agreements") with JCS. The Non-Compete Agreements provided that for a one-year period after leaving JCS, Munoz and Abreu would not own, operate, or join any business in direct or indirect competition with JCS located within a sixty-mile radius of a JCS office.

In June 2013, JSC filed a lawsuit in this Court alleging that Munoz and Abreu violated the Non-Compete Agreements by operating Defendant Right Hand Staffing Solutions ("Right Hand"), an entity that allegedly provides the same services as JCS within a sixty-mile radius of a JCS office. Specifically, the complaint alleged that Munoz and Abreu used JCS's confidential customer lists to solicit new business for Right Hand. One of those companies was APC Postal Logistics ("APC"). The parties appear to agree that by the time JCS filed its lawsuit in June 2013, APC had stopped doing business with JCS and instead was working with Right Hand.

In September 2013, this Court held a settlement conference with the parties. Soon thereafter, the parties entered into a consent order (hereinafter, "the Consent Order"). The Consent Order provided that JCS would dismiss its action with prejudice; in return, Defendants agreed that from September 4, 2013 through August 31, 2014, they would not conduct business with, service, or solicit any customers identified on Schedule A. Additionally, in the event that Defendants were contacted by customers listed in Schedule A, Defendants would be required to inform those customers that they could not do business with them until the expiration of the restriction period.

Schedule A lists out a number of customers subject to the Consent Order, including APC. Some of the listed customers include an "[e]xception to 12 month restriction." One

customer includes an exception providing that "Defendants' five currently placed temporary staffing employees can remain at company." Another customer is subject to the exception that "Defendants can place chemists only." That said, APC is not subject to any exceptions. After the parties executed the Consent Order, the matter was closed. However, upon the consent of the parties, this Court so ordered that it would retain jurisdiction over any dispute involving the Consent Order.

JCS filed the instant motion in January 2015.[1] According to JCS, Munoz and Right Hand have continued to solicit business from APC in direct violation of the Consent Order. JCS became aware of this when in May 2014 an APC executive informed JCS that he had used, and was continuing to use, services from Right Hand for approximately two years. After JCS filed its motion, Right Hand agreed to provide JCS with redacted business records and Munoz agreed to appear for a deposition.

The business records JCS received from Right Hand indicated that Right Hand billed APC for a total of 28,094.04 employee hours between September 17, 2013 and July 25, 2014, a period subject to the twelve month restriction outlined in the Consent Order. In his deposition, Munoz admitted that (1) he agreed to not do business with customers listed in Schedule A for a twelve-month period, subject to certain exceptions; (2) APC was a customer listed in Schedule A; (3) the restrictions on doing business with APC were not subject to any exceptions; (4) JCS continued to do business with APC during the restricted period; and (5) by doing business with APC during the restricted period, he and Right Hand violated the Consent Order.

## II.   DISCUSSION

JCS seeks to enforce the Consent Order. Just as it would for any other contract, this Court must interpret consent orders in accordance with their plain language. *See Holland v. New Jersey Dept. of Corrections*, 246 F.3d 267, 281 (3d Cir. 2001) (citing *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990)). "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." *Karl Sales & Service, Inc. v. Gimbel Brothers, Inc.*, 249 N.J. Super. 487, 493 (App.Div.1991). Moreover, this Court cannot interpret consent orders in a way that would "make better deals for parties than they freely and voluntarily chose to make for themselves." *Seaview Orthopedics v. Nat'l Healthcare Resources, Inc.*, 366 N.J. Super. 501, 510 (App.Div.2004).

The terms of the Consent Order are crystal clear. Subject to certain exceptions, the Order prohibits Defendants from conducting business with or soliciting business from the customers listed in Schedule A for a twelve-month period. The parties agreed that APC would be a customer listed in Schedule A, and they further agreed that the restriction on

---

[1] JCS's instant motion concerns the conduct of only Munoz and Right Hand, not Abreu.

3

conducting business with APC would not be subject to any exceptions. Notwithstanding the Consent Order, Munoz and Right Hand continued to do business with APC during the restricted period. Consequently, Munoz and Right Hand violated the plain terms of the Consent Order. Indeed, in his deposition, Munoz admitted that he violated the terms of the Order by doing business with APC.

Munoz and Right Hand put forth two arguments for why they did not violate the Consent Order. Both of these arguments are meritless. First they argue that JCS alleges wrongdoing only on the part of Right Hand, and therefore Munoz should not be subject to suit. However, Munoz was a party to the Consent Order, and through his actions on behalf of Right Hand, violated the Order's terms. Second, Munoz and Right Hand argue that the Consent Order did not require them to remove the individuals that they had already placed at APC prior to the Order's execution. This argument flies in the face of the plain terms of the agreement. Unlike some of the other customers listed in Schedule A, the restriction on doing business with APC was not subject to any exceptions. Even more tellingly, the Consent Order expressly noted that for certain customers, Right Hand was not required to remove staffing that it had already placed. No such carve out existed for APC, which demonstrates that the parties agreed that Right Hand could not have *any* staffing placements at APC until the twelve-month period expired. *See Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App.Div.1997) (when interpreting a contract, the writing must be interpreted as a whole).

Having found that Munoz and Right Hand violated the Consent Order, the Court must determine what relief, if any, JCS is owed. JCS first argues that it is entitled to compensatory damages equaling the amount of net profits Right Hand has reaped from doing business with APC. The Court disagrees. Compensatory damages are designed "to put the injured party in as good a position as…if performance had been rendered." *Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co., L.L.C.,* 191 N.J. 1, 13 (2007) (citations and quotations omitted). Therefore, a party in breach is liable for the natural and probable consequences of the breach. *Pickett v. Lloyd's*, 131 N.J. 457, 474 (1993) (quoting *Donovan v. Bachstadt*, 91 N.J. 434, 444-45 (1982). And while "the loss must be a reasonably certain consequence of the breach, the exact amount of the loss need not be certain." *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 409 (2009) (citations and quotations omitted).

For the purposes of determining damages, it is critical to note that at the time the parties entered into the Consent Order, APC was not doing business with JCS. Specifically, the briefs and the supporting documents show that prior to JCS filing its lawsuit in 2013, APC had already dropped JCS for Right Hand "as a result of a business decision that APC [had] made due to [its] unsatisfactory experience with JCS." (Calutti Cert. at ¶¶ 4-5). In light of these facts, it is difficult to argue that a "natural and probable consequence" of Right Hand and Munoz's breach of the Consent Order would be that APC would rekindle its business relationship with JCS. Indeed, other courts have held that the violation of a non-compete

4

provision will not result in an award of compensatory damages where it is not reasonably certain that the plaintiff would have gained the customer or business listed in the non-compete had there been no breach. *See, e.g., American Air Filter Co, Inc. v. McNichol*, 527 F.2d 1297, 1301 (3d Cir. 1975); *RPM Performance Coatings v. Fredrick*, No. 12-1392, 2013 WL 5998447, *3 (W.D. Mo. Nov. 12, 2013) (applying New Jersey law). JCS has not provided a shred of evidence indicating that it likely would have regained APC's business had Defendants not breached the Consent Order.[2]

JCS also requests that this Court enter an injunction requiring that Munoz and Right Hand comply with Consent Order's restrictive covenant by not doing business with APC for one year.[3] When considering whether to award injunctive relief, a court should consider, among other things, (1) the character of the interest to be protected; (2) the relative adequacy of the injunction compared to other remedies; (3) the unreasonable delay in bringing suit; (4) any related misconduct by plaintiff; (5) the balancing of hardships; (6) the interests of the public; and (7) the practicality of framing the order or judgment. *See, e.g., Sheppard v. Twp. of Frankford*, 261 N.J.Super. 5, 10 (App.Div.1992). Considering these factors, the Court concludes that an injunction is appropriate in this case. JCS bargained away its right to sue under the employment agreements in exchange for a chance at regaining APC as a customer without any interference from Defendants. Therefore, refusing to enter the requested injunction would unfairly allow Munoz and Right Hand to enjoy the consideration they received from JCS (dismissal of the original lawsuit) while blatantly disregarding their end of the bargain (ceasing to do business with APC for a one-year period). Additionally, JCS did not delay in bringing this motion and has not committed any related misconduct.

Right Hand and Munoz argue that an injunction is not warranted because (1) APC has no interest in doing further business with JCS, and (2) an injunction would harm APC. The Court rejects these arguments. While the Consent Order in no way guarantees that JCS

---

[2] JCS does not dispute that it was no longer doing business with APC at the time it entered into the Consent Order. Instead, it asserts that it is entitled to compensatory damages because (1) Munoz violated his employment agreement by surreptitiously doing business with APC, and (2) the only reason JCS terminated its lawsuit was because Munoz and Right Hand entered into the Consent Order and agreed to cease doing business with APC for one year. However, JCS cannot assert a right to compensatory damages based on Defendants' initial breach of their employment agreements. That is because JCS explicitly forfeited those claims when it entered into the Consent Order, which is now the only agreement that JCS can seek to have this Court enforce. *See In re Columbia Gas System Inc.*, 50 F.3d 233, 241 n. 14 (3d Cir. 1995) (where settlement agreement extinguishes claims arising out of earlier contract, only the settlement agreement itself remains enforceable). Therefore, the fact that Defendants may have violated their employment agreements has no bearing on whether they owe JCS compensatory damages under the Consent Order.

[3] In support of its argument, JCS points to a provision of the Consent Order entitles JCS to injunctive relief in the event of a breach.

will regain APC's business – which mainly explains why JCS is not entitled to compensatory damages – it nonetheless provides JCS with the *opportunity* to solicit APC without interference from Defendants.  Therefore, JCS should receive what it bargained for.  Finally, while APC may prefer to do business with Right Hand, Defendants have not shown that APC would suffer sufficient harm that would require this Court to refrain from entering an injunction.[4]

Finally, JCS seeks reimbursement for attorneys' fees and costs it incurred in connection with bringing this motion.  A prevailing party can recover attorneys' fees and costs "if they are expressly provided for by statute, court rule, or contract."  *Packard-Bamberger & Co. v. Collier*, 167 N.J. 427, 440 (2001).  JCS is the prevailing party on this motion:  it has successfully demonstrated that Munoz and Right Hand breached the Consent Order by doing business with APC, and it has successfully obtained an injunction requiring compliance with the Order's terms.  Moreover, the Consent Order provides that "[i]n the event there is a claim for breach, the prevailing party shall be entitled to reasonable attorneys' fees and legal costs…." (Consent Order at ¶2).  JCS is therefore entitled to reasonable attorneys' fees and costs.  The Court will require that JCS submit an affidavit of attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, JCS's request for compensatory damages is **DENIED**, and its request for an injunction and reasonable attorneys' fees and costs is **GRANTED**.[5]  An appropriate order accompanies this decision.

                                                                          /s/ William J. Martini
                                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  May 28, 2015**

---

[4] For example, there is no evidence that APC would be required to use JCS if Right Hand is unavailable.  Moreover, Right Hand and Munoz were well aware that APC was listed on Schedule A when they entered into the Consent Order.  Therefore it is Right Hand and Munoz – not JCS or this Court – that are responsible for any hardship or inconvenience APC may suffer as the result of an injunction.

[5] The Consent Order provided that Defendants would not conduct business with APC from September 4, 2013 through August 31, 2014.  The order accompanying this opinion will enter an injunction that will last for the same duration.