UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOBCONNECTION SERVICES, INC., a Pennsylvania Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>JOSE MUNOZ, ROBERTO ABREU, and RIGHT HAND STAFFING SOLUTIONS, LLC<br><br>    Defendants. | Civ. No. 2:13-3901 (WJM) |
| JOSE MUNOZ and ROBERTO ABREU,<br><br>    Plaintiff,<br><br>  v.<br><br>BRECKENRIDGE ENTERPRISES, INC. and SOUTH EAST PERSONNEL LEASING, INC.,<br><br>    Defendants. | OPINION |

1

**WILLIAM J. MARTINI, U.S.D.J.:**

Pursuant to Fed. R. Civ. P. 60(b), Defendants Jose Munoz and Right Hand Staffing Solutions, LLC ("Defendants") seek relief from a July 6, 2015 order awarding Plaintiff Job Connection Services, Inc. $28,194.20 in attorneys' fees and costs. In response, Plaintiff has filed a cross-motion to enforce the July 6, 2015 order and hold Defendants in contempt of court. For the reasons stated below, Defendants' motion is **GRANTED in part and DENIED in part**, and Plaintiff's cross-motion is **DENIED**.

I.   BACKGROUND

Plaintiff Job Connection Services, Inc. ("JCS") is in the business of providing staffing support and other human resources services to employers in a variety of industries. Defendants Munoz and Abreu are former JCS employees who collectively worked at JCS from 2005 to 2013. In June 2013, JCS filed a lawsuit accusing Defendants[1] of violating non-compete clauses contained in their employment contracts. In September 2013, the parties settled the matter and entered in a consent order (hereinafter, "the Consent Order"). The Consent Order provided that JCS would drop its lawsuit in exchange for Defendants' promise that they would not do business with certain customers (hereinafter "Restricted Customers") for a one-year period.

By July 2014, JCS suspected that Defendants continued to do business with a Restricted Customer in violation of the Consent Order. Accordingly, JCS filed a "Motion In Aid of Enforcement of Consent Order and Judgment Seeking Leave to Take Discovery From Third Parties Pursuant to Federal Rule of Civil Procedure 69(a)(2)." JCS' motion sought permission to serve subpoenas on the Restricted Customers that were suspected of doing business with Defendants. The stated purpose of the discovery was to confirm that Defendants were in breach of the Consent Order. Defendants opposed the motion, and JCS filed a reply brief. On September 17, 2014, U.S. Magistrate Judge Mark Falk held a telephonic conference with the parties. During that conference, JCS indicated that Defendants agreed to provide discovery, which obviated the need for the issuance of the third-party subpoenas. Consequently, Judge Falk denied the motion without prejudice.

As per the parties' stipulation, JCS received discovery from Defendants. Of particular note, JCS was able to depose Defendant Munoz. After reviewing the deposition transcript, client files, and other documents pertinent to the matter, JCS filed a "Motion to Enforce the Court's Consent Order of September 17, 2013." Defendants opposed the motion, and JCS filed a reply brief. On May 28, 2015, the court issued an opinion and order concluding that Defendants were in violation of the Consent Order and that JCS was entitled to an injunction and an award of attorneys' fees. The Court further directed JCS to file an affidavit of attorneys' fees and costs. In line with that directive, on June 26, 2015, JCS

---

[1] Abreu was not named in JCS' motion to enforce the consent order.

2

filed an affidavit indicating fees and costs in the amount of $28,194.20.  On July 6, 2015, the Court issued an order (hereinafter, "the July 6 Order") awarding that amount to JCS.  On July 30, 2015, Defendants filed the instant motion challenging the amount awarded in fees and costs.

## II.  DISCUSSION

### A.  Timeliness

JCS first contends that Defendants' submission is untimely because it is a motion for reconsideration under L.Civ.R. 7.1(i), and therefore must have been filed within 14 days of the July 6 Order.  The Court disagrees.  "A party may seek to modify attorneys' fees and costs that were awarded as part of the original judgment through a Rule 60(b) motion."  *RD Legal Funding Partners, LP v. Ivey*, No. 11.-3775, 2014 WL 7272953, *2 (D.N.J. Dec. 15, 2014) (citing *Walker v. Astrue*, 593 F.3d 274, 280 n 5 (3d Cir. 2010)).  Under Fed. R. Civ. P. 60(c), Defendants were required to file their motion within a reasonable time—and in certain circumstances, no more than a year after the entry of the July 6 Order.  Defendants' motion, which was filed 24 days after July 6, 2015, is therefore timely.

### B.  Rule 60(b)(1)

Having found that Defendants' motion is timely, the Court must determine whether Defendants are entitled to seek relief from judgment under Rule 60(b)(1), which allows for relief from judgment in the event of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  It appears that Defendants seek relief under this rule on the grounds that they believed they would have more time to respond to JCS' fee application.  In determining whether relief is appropriate in cases like this, Courts are to consider the four *Pioneer* factors: (1) the risk of prejudice to the non-movant; (2) the length of delay; (3) the reason for the delay, including whether it was in control of the movant; and (4) whether the movant acted in good faith.  *In re Cendant Corp. PRIDES Litig.*, 234 F.3d 166, 170—71 (3d Cir. 2000) (citing *Pioneer Inv. Servs. v. Brunswick Assocs. LP*, 507 U.S. 380, 395 (1993)).  This is an equitable test "which requires a court to take into account the totality of the circumstances."  *Ethan Michael Inc. v. Union Twp.*, 392 F. App'x 906, 909—10 (3d Cir. 2010).  Applying these factors, the Court concludes that Defendants are entitled to relief from judgment.  First, prejudice to JCS is minimal.  While Defendants' objection to the fee application required JCS to file a response, granting the Rule 60(b)(1) motion would not require JCS to expend additional resources or suffer any other form of prejudice recognized under *Pioneer* and its progeny.  *See, e.g., In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999) (non-movant cannot show prejudice if it alleges no more than loss of a windfall resulting from the grant of Rule 60(b) relief).  With respect to the other factors, the record shows that Defendants filed their opposition only 24 days after the Court issued its July 6 Order.  Moreover, while the Court would have expected Defendants to promptly indicate their intention to object to JCS' fee

application, the Court cannot say that Defendants were at fault or otherwise acted in bad faith. Therefore, Defendants have met the requirements of Rule 60(b)(1).

### C. JCS' Fee Application

The Court now must decide whether any of Defendants' objections to the fee application have substantive merit. Defendants first argue that because their attorney incurred only $9,000 in fees while defending this action, JCS should receive no more than that amount. The Court rejects this argument. "Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party…does not necessarily indicate whether the hours expended by the party seeking fees were excessive." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (citing *Johnson v. Univ. College of the Univ. Ala. In Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)). Here, JCS had the far greater burden than did Defendants: it was responsible for investigating a potential breach of the Consent Order, seeking and taking discovery, proving the elements of breach of contract by pointing to specific evidence, assessing damages, and explaining why it was entitled to injunctive relief. Moreover, a comparison of fees may be inappropriate where "the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work." *Ferland*, 244 F.3d at 1151. The Court will not go into great detail regarding the discrepancy between the quality of representation for Defendants and JCS. However, it will remark that the work-product of JCS' attorneys reflected thorough research, thoughtful analysis and a strong grasp of the record, whereas the work-product of Defendants' counsel was not of the same caliber. The Court therefore rejects Defendants' arguments that JCS' fees should be capped at $9,000.

However, the Court does agree with Defendants' general argument that JCS' fee award should be reduced. Specifically, the Court finds that JCS should not be awarded fees in connection with bringing its initial "Motion In Aid of Enforcement of Consent Order and Judgment Seeking Leave to Take Discovery From Third Parties Pursuant to Federal Rule of Civil Procedure 69(a)(2)," which Magistrate Judge Falk denied without prejudice. The Court's conclusion is based on the fact that the motion was meritless.

Where a plaintiff seeking fees has obtained "only partial or limited success" in certain phases of an action that forms the basis of a fee application, a reduction in the fee award may be warranted. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). *See also Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 319 (3d Cir. 2006). Fed. R. Civ. P. 69(a)(2) provides that "[i]n aid of the [money] judgment or execution, the judgment creditor…may obtain discovery from any person…." Thus, the rule is to be used as a device to obtain information regarding a judgment debtor's assets. *See Haiying Xi v. Shengchun Lu*, 330 Fed.Appx. 403, 406 (3d Cir. 2009); *see also* 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3014 (2d ed. 2012) (third persons may be examined about the assets of the judgment debtor under Fed. R. Civ. P. 69(a)(2)). However, discovery pursuant to the rule "is not unlimited, and must be kept pertinent to the goal of discovering concealed

assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons." *ITOCHU Intern., Inc. v. Devon Robotics*, LLC, 303 F.R.D. 229, 232 (E.D.Pa. 2014) (internal citations and quotations omitted). Even assuming that the Consent Order constitutes a "judgment" under Fed. R. Civ. P. 69(a)(2), it is clear that JCS' Rule 69(a)(2) motion had no intention of seeking the discovery of concealed assets; rather, the motion's obvious purpose was to obtain evidence demonstrating that JCS was in breach of the Consent Order. Therefore, JCS' Rule 69(a)(2) motion, which Judge Falk denied as moot, was without merit. Moreover, JCS did not first seek to obtain discovery from Defendants before filing a Rule 69(a)(2). This is noteworthy because the record shows that Defendants provided discovery to JCS without much protest, which means that even if the Rule 69(a)(2) motion did have merit, it is not at all apparent that the motion was necessary. The Court therefore concludes that the $7,758.50 in fees and $22.79 in costs attributable to the improper Rule 69(a)(2) motion should be deducted from JCS' fee award.

Outside the fees associated with the Rule 69(a)(2) motion, Defendants also argue that many of JCS' other billing entries are unnecessary or unreasonably excessive. The Court disagrees. A district court retains a great deal of discretion in deciding whether a fee award is reasonable. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, (3d Cir. 1989). When making its determination, Courts will assess the reasonableness of the attorney billing rates and the hours spent working on a particular matter. *Interfaith Cmty. Org. v. Honeywell Intern.*, Inc., 426 F.3d 694, 705 (3d Cir. 2005); *Pub. Interest Research Grp. Of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995). In demonstrating that Defendants were in breach of the Consent Order, JCS was not at liberty to merely file a *pro forma* motion and wait for a favorable disposition. Rather, it had to obtain discovery from Defendants, prepare for and conduct a deposition of Jose Munoz, analyze the evidence to produce a factual record supporting its position, conduct legal research, file a moving brief, and submit a reply to Defendants' opposition. The Court has reviewed the entries associated with those tasks and concludes that they are reasonable.

### III.   CROSS-MOTION FOR SANCTIONS

JCS has also moved for this Court to hold Defendants in contempt for refusing to comply with the July 6 Order. As explained above, Defendants were entitled to seek relief from the July 6 Order, and in fact have made one successful argument that has resulted in a fee reduction. It would therefore make little sense to hold Defendants in contempt for filing a motion that was partially successful. JCS' cross-motion for contempt is therefore **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED in part and DENIED in part**, and JCS' cross-motion is **DENIED**.  An appropriate order accompanies this decision.  JCS' award will be reduced to $19,291.50 in fees and $1,121.41 in costs.

/s/ William J. Martini<br>
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  September 18, 2015**

6